Good morning. Kara Hartzler for Petitioner of Byron Lima-Lima. In this case, the government is asking this Court to believe that close enough is good enough. The government has the burden to show that Mr. Lima, a 20-year lawful permanent resident, was convicted of aggravated assault committed with an intentional mens rea. Even though the statute is overbroad and the factual basis contains no mention of any mens rea, the government urges the Court to assume that Mr. Lima pleaded guilty to such a mens rea. Let's say we're into the modified categorical approach in this case, correct? Yes, Your Honor. Correct, Your Honor. All right. So let's just go right to these documents. Yes, Your Honor. The judicially noticed documents that can be relied upon in determining whether, under the modified categorical approach, he actually pled to an aggravated felony. Yes, Your Honor. Okay. So we have the plea agreement. Correct. Right? The plea colloquy. Correct. And the abstract of judgment and the indictment. I don't believe we have an abstract of judgment, Your Honor. I think that's a document specific to California. We have a judgment. It's a judgment of conviction. It is a judgment of conviction, correct. Okay. So why, if you look at all, if you take everything all together, why isn't that he didn't, although the plea is a little bit odd, I mean, the factual basis that the lawyer gives to the judge, it's a little bit, it doesn't actually track. But if you put it all together, why doesn't that, why isn't that good enough? Because we can't put it all together. Why not? We can't use the indictment in this case. The reason we can't use the indictment is because in Arizona, there's a specific written plea agreement. Yes. And let's take that, let's take that for a starting point. You can't use the indictment because the plea agreement says it supersedes the indictment. Correct. But we have a plea agreement and we have a colloquy in which I think a reasonable person could only conclude that the part of the statute under which he admitted guilt was the one that requires intention, although he didn't say those words. So you begin your argument by saying close enough isn't good enough. What's good enough? Well, in this case, Your Honor, it would be good enough if the factual basis said intentional. It would even be good enough if the judgment specifically stated that the — Sub two. Exactly. Sub two. It would be good enough if the written plea agreement said as charged in the indictment. Any of those things would have been very easy to get into the record of conviction, and they aren't. And essentially what's going on here, and I think that that frames the issue very well, how close is close enough? Now, in other cases, this Court has been very, very loathe to speculate. In fact, I think a very good example is Ruiz Vidal. In a situation like that, there was an indictment or a complaint that said that this person is charged with possession for sale of methamphetamine. At the pleading, the person amended the count to say only possession of a controlled substance. Now, everyone in that case sort of knows, well, of course it was probably methamphetamine. It was just amended. But this Court said speculation is not enough. And that's a clear situation where I think it would be almost more likely that in that case that it was a generic offense than it would be here. What does Kabantech do to your argument? Kabantech actually does not apply to our argument, Your Honor. And the reason is because it doesn't have that specific Arizona written plea agreement. And because in the — Kabantech, as I recall, was a California — and I forget the word, but it was — what in Arizona would be a NOLO plea? It was a People v. West plea. Right. West plea. And first of all, Your Honor, we would contest — and Kabantech is in the process of doing its petition for certiorari to the Supreme Court. Sure, but it's the law of the circuit. It is the law of the circuit right now. We would actually also — we would first of all say that Kabantech doesn't apply because there was no equivalent of the Arizona plea agreement here that specifically amended it. And Kabantech, as I recall, the defendant pleaded to count one of the indictment, although he did throw so through this California West procedure. He did. So that you had a conviction on count one, and count one met the — met whatever generic requirement. We have an abstract of judgment that says count one. And we have a plea agreement in that case, a transcript that says count one. However, we don't have anything that says this specifically amends the offense that he is convicted of to that which is what he pleaded to, which is the factual basis in this case. The reason I ask about Kabantech is our prior cases seem to say that it must be established unequivocally that the generic offense was either admitted to or that the person was convicted of it. And Kabantech puts that a little bit into question, doesn't it? I think there's a lot of confusion over Kabantech. I think there's issues in terms of whether it is in accord with, you know, certainly in accord with prior en banc precedent, both Vidal and this Court's en banc decision in Young. Also, I would point out to the Court, as I believe I brought up in my 28J, that there is certainly right now pending before this Court an en banc case called when we decide whether an en banc decision controls. And if this Court believes that Kabantech actually absolutely controls the outcome of this case, we would ask this Court to actually just hold it in abeyance for this Court's decision en banc in Cerrone, because I believe that that may affect the outcome of and the long-term validity of Kabantech. So could we go to the plea agreement for just a minute? Sure. So as I, you know, as I looked at this plea agreement, it's, when it talks about what it amends, where it says it gets, the following charges are dismissed. And it says the allegation of dangerous and counts three to five. Is that all it does? No, Your Honor. It absolutely, it amends the language of the indictment to whatever the person pleaded guilty to. So what we would say is... How do we know that? Because it says it. Where? In paragraph four. Which paragraph? Paragraph four. Four. And I would also point out that only several months ago, this Court held in Anderson a very analogous case using the exact same plea agreement form as here, that that... Non-precedential case. Non-precedential, correct. But in terms of the consistency of how people, you know, figure out, well, does an Arizona plea agreement change things or not? Does it amend it or not? We would certainly encourage the Court to be consistent with even its non-precedential opinions in the past. I want to sort of run through to make sure that we're properly obeying discounts here. We know this has to be a modified categorical approach because the umbrella statute has three ways that it can be... Correct. ...that it can be violated. Only one of the... And therefore, we're entitled to look at what documents. What are the Shepard documents here? The plea agreement, the indictment, although you say it's superseded, the colloquy. The colloquy, certainly, yes. And the judgment of conviction. And the judgment. Is there anything else we're entitled to look at? Not that I'm aware of, Your Honor. Not in this record. Not in this record. Not in this record. That's really the question I wanted to ask, so thank you. Okay. If the Court has no more questions, I'll save the rest of the time for rebuttal. That's fine. Thank you. Good morning, Your Honor. This is Anthony Norwood for the Government. The Court obviously knows my argument. I think this is good enough. I think you have to look at the indictment in this case. He pled guilty to... Yeah, but the problem with that argument is under, you know, under the Taylor approach, which we do apply to all of the indictments in this case. We apply in immigration cases. When you do the categorical, it's basically a category. You look at the statute. You look to see if the underlying state statute compares with the generic offense or with the related federal offense. And there's a great deal of certainty there. And the modified categorical approach is supposed to result in the same kind of certainty. And so our case law reflects that we're not supposed to speculate about actually what the defendant pled guilty to. It's supposed to be obvious from the document. Your Honor, that's my... So why does that principle of it's good enough here actually, isn't that consistent with what the Supreme Court is trying to tell us in the modified, you know, the categorical modified categorical approach? Yes, we believe it does because you have to, in this case, you have to find a factual basis. There has to be a factual basis for this conviction. But see, what you're saying to me is that because the Arizona trial judge wasn't really concerned with whether or not what subsection it was under because he had a plea here to the broader section, he should have somehow obtained a factual basis to satisfy federal immigration authorities. Well, we have a case where I think the plea agreement is quite clear. It supersedes the indictment. It amends the indictment. And the count, the only count of issue is count one, right? We're not worried about count two. Count one says he's pleading guilty to aggravated assault without mentioning a subsection. So that doesn't help us. And so I think the only way you can get to your argument is by saying, well, what was said during the plea colloquy establishes that this is the generic offense. So tell me why what was said during the plea colloquy establishes that this was a generic offense. Well, in the plea colloquy, the Petitioner's Counsel said that he brandished a knife. And we would argue that brandished is an intentional act. But if I may go back, my argument is that the Arizona judge was not casual about the factual basis of this conviction. The Arizona judge could not have been, should not have been casual about the factual basis of this conviction. He had to have a mens rea. He had to have an intentional. Well, he may have been able to infer there was a mens rea. But my question is, for our purposes, as Judge Pez asked, don't we have to be certain? Because this is the whole purpose of the categorical approach is, I think our hands were slapped pretty hard by this case, and then we have to be certain. And I think that's one of the very important discamps, was don't go around mucking about in the record and try to figure out what happened. If you can establish it on the face of the record, that's fine, but don't go speculate. So it's my argument that this is not that kind of speculation. For example, I don't think this case clearly fits in with these methamphetamine cases, as I call them, because in those convictions, you didn't have to be established, actually, that methamphetamine was the controlled substance. It could just be a controlled substance. Our argument here is it has to be intentional, because that's the main thing. But the intent required. I'm sorry. I didn't mean to speak. I'm sorry. The intent required by the Arizona statute is not the intentional brandishing. It is the intent to assault, the intent to put somebody in fear of bodily harm. So the fact that he said he brandished to me doesn't get you the mens rea necessary for the intent. Is there something else in this plea that gets you to the mens rea necessary for the intent? In the plea colloquy, I would say it's the use of the word brandish. To brandish is to intentionally intimidate with a weapon. It's the best definition of foundry. So you're saying that it's inherent in the brandishing the weapon that the person who brandishes the weapon intends to place that person in reasonable apprehension of their physical safety. It just must needs follow from the allegation. I believe that's a normal, ordinary reading of the word brandish. Is it? I'm not. I think that we've got to look at the indictment. If I had a weapon back here and I picked it up to show it to the other two judges, wouldn't that be brandishing? I mean, it's not a term we use in every day colloquy, to be sure. My reading of the definition, and the only one I found was a Federal, I think a sentencing guideline definition, was that would not be brandishing because you're not intending to intimidate. You have to intend to intimidate to brandish. You don't actually have to show the gun. You can have it in your pocket. Isn't the question what brandishing means under Arizona law? And I must admit to no knowledge of that. I haven't found one. I couldn't find one, Your Honor. I couldn't find one. So in your view, the word is intentionally in the statute of superfluous, that even if one, because brandishing must carry with it the intent to intimidate.  I believe that intentionally is in these conviction documents. And if you have a reasonable reading of these conviction documents, you have an intentional act. But the only place you can find it, I take it, is in brandishing. And in the indictment, Your Honor. The indictment has been amended by the plea agreement. Well, it has been amended by the plea agreement. And as Judge Pius says, it dropped to the dangerousness and it dropped the other counts. It does not refer to amending count one. It makes specific reference to count one. It looks to me like count one is included as part of the plea agreement. It doesn't say count one as amended here. It just says count one. Wouldn't a reasonable interpretation of the plea agreement lead a neutral observer to believe that it's at least possible that the intent is to allow the indictment to conform to the conduct actually pled to, which would mean to conform to the plea colloquy as long as that's sufficient factually to give rise to a valid conviction? As I understand the question, I believe that's right, Your Honor. But I think we have intentional in the plea colloquy and in the indictment. I don't think that the plea agreement – I don't think a normal – we don't think a normal reader of that plea agreement would say that count one is amended and the mens rea is taken out of it. What are the best cases that – I think that's an illogical reason. From your perspective, what are the best cases that support your position here? I think perhaps Kabantech. Kabantech? Isn't that a little bit different? It is a little bit different. It's the methamphetamine case. Have you – oh, I'm sorry. Not just besides methamphetamine. There was no plea agreement in Kabantech like this. No, there wasn't, Your Honor. But it refers to the – to count one of the indictment specifically. But he pleaded to count one of the indictment in Kabantech, and here he's pleading in effect to count one of the plea agreement, which supersedes the indictment, amends the indictment. The plea agreement also says – just says count one. Let me ask you, have you looked at the presumptive sentences for count one? Do they – are these – are they the same presumptive sentences for each – for each subsection of count one? I'm not sure I understand. Well, I'm sorry. There's three ways to commit assault. Only one matters in this case. Are the presumptive sentences for each of those three ways to commit assault, as long as they're aggravated, exactly the same? No, Your Honor. The three are different. Does the sentence that he agrees to here in count one tell us anything? It does – it does not – it does not set forth a mens rea. No. No, I understand. But it says the crime carries a presumptive sentence of three and a half years, a minimum of two and a half, and two years if the trial court makes an exceptional finding. Is that a sentence that's only applicable to the – Your Honor, now that I understand your question, I'm sorry. I didn't research that. Okay. I'm sorry, Your Honor. I'm not sure whether that – whether under the sentencing guidelines, I didn't – I did not research that. If you'd like me to, I could write you a letter about that. Do you think it's plain that Brandish is something more than fair display? Yes, I do, Your Honor. I think Brandish is threatening, intentionally threatening, intimidating. Okay. Do you have any further questions? Thank you, Your Honor. Thank you, counsel. We appreciate your argument. Is there some rebuttal time? Just going to this issue of Brandishing, which I really do agree is at the heart of this, is that, first of all, the government, as they concede, never argued in their brief that under Arizona law, Brandishing requires an intentional mens rea. I actually also looked into this as well, and I didn't find anything under Arizona law. So while the government is urging us to use normal, ordinary reading, I think really what we're bound by is Arizona's definition of Brandish, and right now no one can really find one. As a result, what we're at is, again, a situation of speculation, where the government is asking the court to speculate as to how Arizona would define Brandishing, whether it would define it with an intentional or a reckless mens rea.  Are you saying, then, that any time that we need to interpret the meaning of some undefined term, that we'd be in the land of speculation, and therefore we could not apply the modified categorical approach? Well, I certainly think that in most cases there's going to be either a definition under state law or there's going to be situations in case law where, you know, you can say, well, this seems to really always only happen when it's intentional. And here there's none of that. But Arizona law does provide that you're supposed to read words in their ordinary meaning, right? I'm not aware of a particular provision, but that certainly could be, Your Honor. Does the federal generic offense include Brandishing? There are federal sentencing guidelines where Brandishing is treated as an intentional act. I have not. Does that help us at all? I have not looked into that, Your Honor. And I don't think the sentence makes any difference here. It just struck me looking at the plea agreement, because I think it's the generic sentence we're ready to solve. But there's not a separate sentencing presumptive sentence for each of the subdivisions, is there? Not that I'm aware of, Your Honor. Not that I'm aware of. And the last point that I will make, Your Honors, is I would just, again, go back to this point of is close enough good enough. And I would also point this Court to Moncrief. Even though in Moncrief we're actually dealing with the point of the categorical approach rather than modified, the Court stressed two very important things. First of all, that we have to look at the least of the acts criminalized. And second of all, that the ambiguities always resolve in favor of the noncitizen. And I think Moncrief really sets up the approach that we have to take here when there's not enough information. And with that, I'll conclude. Thank you, Your Honor. Thank you very much. Thank you, counsel. We appreciate your arguments in this matter. Have a safe trip back to your home base.
judges: Erickson, Paez, Hurwitz